**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**James Allen WHITE, Jr.,**
**Defendant–Appellee.**

No. 88–5772.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 31, 1989.
Decided March 28, 1989.

William T. Warren, III, Asst. U.S. Atty. (argued), Nashville, Tenn., for plaintiff-appellant.

Sumter L. Camp, Asst. Federal Public Defender (argued), Nashville, Tenn., for defendant-appellee.

Before KRUPANSKY and BOGGS, Circuit Judges, and EDWARDS, Senior Circuit Judge.

BOGGS, Circuit Judge.

The government appeals the decision of the district court granting White's motion to suppress evidence of a firearm in the course of prosecution of White for possession of a firearm by a convicted felon. We reverse, finding that the search was a valid search incident to White's arrest.

I

The facts underlying the charges against White are as follows. White was operating his automobile southbound on Dickerson Road, a four-lane road in Nashville, Tennessee, at about 9:25 p.m. on April 14, 1987. White testified that he had been drinking and had stopped at a store to purchase more beer, after which he returned to his car and continued driving. According to his testimony, he changed into the left lane of Dickerson Road in preparation for making a left turn. However, because another vehicle was stopped at the intersection in the left (turning) lane in front of White, he decided not to turn, and again switched lanes, this time back into the right lane. White claims that another vehicle passed him on the left at about the same time he saw a Ford Bronco with blue lights turned on approaching him from behind. White then switched back into the left lane to accommodate the Bronco.

The Bronco was an unmarked police vehicle being driven by Officer Stevens, a vice officer from the Nashville/Davidson County government. He was patrolling the area in plain clothes, and observed White driving in what appeared to be an erratic manner. Stevens claims that the car was weaving from the right lane partially into the left lane and back again. Stevens turned on his lights and siren and stopped the car to investigate whether the driver was intoxicated.

Upon Stevens's signal, White made a left turn and pulled into an empty parking lot. He then got out of his car and produced his driver's license on demand. At that time, Stevens noticed the smell of alcohol on White's breath. He asked White to perform a field sobriety test consisting of touching his nose, which White failed repeatedly. Stevens claims to have no recollection of having White stand on one foot, but earlier told a Federal Alcohol, Tobacco and Firearms (ATF) agent that he had. Stevens then concluded that White required a breathalyzer test for which he would have to be taken to the police station. Thus, Stevens placed White under arrest on the charge of driving while intoxicated, and placed White in the rear seat of a police cruiser.

Stevens testified that he then went to White's vehicle and looked inside through an open window with the aid of a flashlight. He testified that he saw a .38 caliber revolver in plain view on the front floorboard between the driver's seat and the brake pedal, and retrieved the gun. White disputes this testimony, claiming that Stevens went to the car following White's arrest, opened the door, and began searching the interior, the glove compartment and the seats, and that the gun was found under one of the seats.

White asked if he could lock his car, and was told that he could call someone from the station to let them know where the car was so that they could pick it up. Stevens then had the vehicle towed to the police impound lot because White had been arrested for DUI. Stevens testified that he towed the car for White's protection because the area was a high crime area. However, the vehicle was not blocking traffic.

White was taken to the station and a breathalyzer test was administered. The test results indicated a blood alcohol level of .10%. White was charged with driving while intoxicated and carrying a firearm.

The trial judge analyzed White's fourth amendment challenge to the warrantless search of the car and seizure of the gun, first stating that Stevens conceded that his recollection of the relevant events was poor, and noting that his testimony was inconsistent in a number of crucial details

with a statement he had made to an ATF agent on November 20, 1987, about six months after the event. In that statement, Stevens stated that he saw the gun when he first approached White's car to speak with White, and that the gun was in plain view on the floorboard at that time. Stevens made no claim that he had reasonable cause to believe that there was evidence of crime in the car, or that there was any probable cause to have taken the vehicle into custody. Nor did he claim exigent circumstances justifying a search without a warrant. On this basis, the trial judge concluded that there was no justification for searching the car. He stated that there are limits on the plain view doctrine in that the item must come into plain view in the course of a valid search of the arrestee. Thus, for these reasons, the judge granted White's motion to suppress.

## II

On appeal, the government argues three grounds to support the search of the car and seizure of the gun: (1) the plain view doctrine; (2) the concept of "community caretaking function" enunciated in *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); and (3) the search was a valid search incident to arrest. White maintains that the trial judge was correct in finding that the search of his car and the seizure of his gun were not justified under any of the exceptions to the warrant requirement. At oral argument, White further argued that the original stop of his vehicle was invalid. We agree with the government's assertion that the search was a valid search incident to arrest, and thus find no need to reach the other theories espoused by the government. In that the district court made no factual findings concerning the nature of the stop, we do not consider White's challenge to the stop itself, which may be raised on remand.

## A

■ In general, "stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of those [the fourth and fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979) (citations omitted). The Supreme Court has applied an objective test of reasonableness in determining the legality of car stops and searches, balancing the state "intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interests." *Id.* at 654, 99 S.Ct. at 1396. "An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation." *Id.* at 662, 99 S.Ct. at 1400.

> [P]rotection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of the weapons.

*Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201 (1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)). Although it was alleged, at oral argument, that the initial stop of White's vehicle was invalid, we make no finding on that issue in the absence of a finding by the district court. Thus, we proceed to a discussion of the issue squarely before us: the validity of the search following White's arrest.

## B

■ Under the "search incident to arrest" exception to the warrant require-

ment, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). Further "the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within the reach of the arrestee, so also will containers in it be within his reach." *Ibid.* However, in this case, White was not simply under arrest. According to his version of the events, he was handcuffed and placed in the back seat of a police cruiser—certainly out of reach of the car or anything in it. Thus, the question becomes whether the *Belton* rule applies even when the arrestee is out of reach of the car and its contents.

The Tenth and Eighth Circuits have held that a search of the interior of an automobile incident to a lawful arrest is valid, even when the arrestee is out of the car, *United States v. Cotton*, 751 F.2d 1146, 1149 (10th Cir.1985), or when the arrestee has already been transported to the police station. *United States v. McCrady*, 774 F.2d 868, 871–72 (8th Cir.1985). This includes the search of a glove compartment. *Ibid.* In fact, in *Belton* itself, the defendants had been asked to get out of their car, arrested, "patted down," and " 'split . . . up into four separate areas of the Thruway. . . .' " *Belton*, 453 U.S. at 456, 101 S.Ct. at 2862. Thus, even after the arrestee has been separated from his vehicle and is no longer within reach of the vehicle or its contents, the *Belton* rule allowing a police officer to search a vehicle incident to a lawful arrest applies, and such a search is valid. *United States v. Karlin*, 852 F.2d 968, 971–72 (7th Cir.1988).

We are aware that the Ninth Circuit has reached a different conclusion. In *United States v. Vasey*, 834 F.2d 782, 787 (9th Cir.1987), the court held that because Vasey was handcuffed and seated in the rear of a police car when the search occurred, he had no access to the car at the time, and, thus, there was no exigency present to justify a warrantless search. Further, the

search was conducted approximately 45 minutes after Vasey had been removed from the scene, making his presence and corresponding threat even more remote from the search. *Ibid.* This long length of time between the arrest and the search in *Vasey* distinguishes that case from White's in that the search in *Vasey* could no longer be considered "contemporaneous" with the arrest. *Belton*, 453 U.S. at 460, 101 S.Ct. at 2864. This is not to say that the time between the arrest and the search is now the determinative fact in car search cases decided by this court; we merely point out one possible ground for distinguishing the instant case from *Vasey*.

To the extent that *Vasey* is contrary to our interpretation of *Belton*, *Cotton* or *McCrady*, we respectfully decline to depart from the view we have taken in the past. For example, in *United States v. Hatfield*, 815 F.2d 1068, 1071 (6th Cir.1987), we held that the search of the interior of a van by a police officer after the suspect had been removed from the van, and while a second police officer was "guarding" the suspect, was a valid seach incident to arrest. There, we stated that "[t]he front passenger area of the van was clearly within [the suspect's] immediate control." *Ibid.* (citations omitted). In that the suspect was no longer in the van, and was being guarded by a police officer, it is obvious that we were referring to the fact that the area *had been* within the suspect's control *before* he was removed from the van. This demonstrates that, in this Circuit, our consistent reading of *Belton* has been that, once a police officer has effected a valid arrest, that officer can search the area that is *or was* within the arrestee's control.

### III

Thus, we hold that, even if White's version of the events is the most accurate of the three versions, the search was justified under the "search incident to arrest" exception. In fact, under any of the versions presented to us, the search and seizure of the gun was valid, and the government's other theories, the "plain view" exception to the warrant requirement or the "commu-

nity caretaking function" discussed in *Cady*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), need not be reached. The decision of the trial court suppressing the gun found in White's car is hereby REVERSED and the case REMANDED for further proceedings.