978 F.2d 1260
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Orlando HOOD (92-5112); Timothy Thomas (92-5113),
Defendants-Appellants.
 Nos. 92-5112, 92-5113.
 United States Court of Appeals, Sixth Circuit.
 Nov. 5, 1992.
 
 Before RALPH B. GUY, Jr. and BATCHELDER, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The defendants, Orlando Hood and Timothy Thomas, conditionally pled guilty to carrying a firearm during and in relation to a drug trafficking offense. Fed.R.Crim.P. 11(a)(2); 18 U.S.C. § 924(c). They appeal the district court's denial of their motions to suppress evidence allegedly seized in violation of the Fourth Amendment. For reasons that follow, we affirm.
 
 I.
 
 2
 Late on the night of October 29, 1990, Memphis Police Officer D.M. Stout was stopped in traffic in front of the Big Star Grocery in Memphis. Stout was on duty with the police department's Interstate Unit. Having previously been assigned to that district, Stout knew that drug trafficking was prevalent in the area and he had personally made numerous drug arrests. While stopped, he saw a Chevrolet Monte Carlo in the store's well-illuminated parking lot with two individuals seated inside. Three persons were standing outside the vehicle, two by the passenger's side and another at the driver's side. Seeing all three reach into their pockets, "lean" their hands into the car, and then put their hands back into their pockets, Stout thought he was witnessing a drug transaction.
 
 
 3
 The officer pulled into the parking lot. The Monte Carlo turned out of the lot into the street and the three individuals ran toward the back of the store. Stout followed the vehicle and pulled it over about one-half mile from Big Star. Using his PA system, Stout told the driver to get out of the car. Hood got out and walked toward Stout, who had by then stepped out of the patrol car. Having noticed a drive-out tag in the Monte Carlo's window, Stout asked Hood whose car it was. Hood replied that he did not know. The officer asked about the other person in the car. Hood said that it was Timothy Thomas.
 
 
 4
 Fearing that the Monte Carlo was stolen, Stout placed Hood in the back of the patrol car and went to get Thomas out of the vehicle. Thomas appeared very nervous. He told Stout that his name was Timothy Brown and that he was carrying no identification. The officer placed Thomas in the back of police car and returned to the Monte Carlo to get the vehicle identification number (VIN) to check if it was stolen. After noting the VIN, Stout shined his flashlight into the car and saw a pill bottle on the front seat with small white things in it which looked like crack cocaine. Stout took the pill bottle, returned to his patrol car, called his partner, Officer White, for a backup, and told defendants that they were under arrest.
 
 
 5
 Stout then ran the VIN; the car was not stolen and was not registered to either defendant. When White arrived, Stout told him about the pill bottle and asked him to have the car towed and to search the vehicle incident to the arrest. White found a Mack 10 type machine gun pistol with 18 rounds of ammunition in the clip under the front seat. Stout ran a check on the weapon and found that it had been stolen during a burglary a month or two earlier. The defendants were then handcuffed and placed into separate cars. Stout searched Thomas and found $650 in cash. The substance in the bottle was, in fact, cocaine.
 
 
 6
 A grand jury returned a three-count indictment charging the defendants with possession of cocaine base with intent to distribute, 21 U.S.C. § 841(a)(1); carrying a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c); and possession of a firearm by a convicted felon, 18 U.S.C. § 922(g).
 
 
 7
 Defendants filed motions to suppress the evidence seized from the Monte Carlo. Following a hearing at which the defendants and officers Stout and White testified, the motions were denied. The district court found that under Terry v. Ohio, 392 U.S. 1 (1968), and its progeny, Stout had reasonable suspicions of illegal drug activity and car theft to support stopping the vehicle and detaining the individuals in the back of the police car, respectively. Moreover, after Stout saw the pill bottle, the court found that he had probable cause to arrest. The court also concluded that White's subsequent search of the vehicle was pursuant to the valid arrest. Defendants conditionally pled guilty to the second count and filed this timely appeal.
 
 
 8
 On appeal, defendants challenge the findings stated above. The government, in addition to defending the district court's decisions regarding these issues, contends that Thomas, as a mere passenger in the Monte Carlo, had no legitimate expectation of privacy in the vehicle and, therefore, lacks standing to contest the seizures.
 
 II.
 A. Standing
 
 9
 In the Fourth Amendment context, standing is not a theoretically distinct issue but is "subsumed under substantive Fourth Amendment doctrine." Rakas v. Illinois, 439 U.S. 128, 139 (1978). "The inquiry after Rakas is simply whether the defendant's rights were violated by the allegedly illegal search or seizure." United States v. Salvucci, 448 U.S. 83, 87 n. 4 (1980).
 
 
 10
 Both defendants rely on the same theories and supporting arguments to invoke the exclusionary rule. Specifically, they claim that Stout unlawfully seized them when he stopped the Monte Carlo and when he arrested them without probable cause by placing them in the back of the patrol car. The cocaine and firearm must be suppressed, they urge, as fruits of these violations. The firearm also must be suppressed, they argue, as the product of an illegal search.
 
 
 11
 The government does not allege that Hood lacked the privacy interests necessary to bottom these challenges. Moreover, we need not reach the government's arguments as to Thomas if no illegal search or seizure took place.[1] Accordingly, we turn to the legality of the officers' conduct.
 
 B. Terry Stop
 
 12
 "[S]topping an automobile and detaining its occupants constitute a " 'seizure,' " implicating the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979). The Constitution only proscribes, however, those searches and seizures which are unreasonable. United States v. Sharpe, 470 U.S. 675, 682 (1985). Under Terry and its progeny, "police officers may stop a person for investigative purposes where, considering the totality of the circumstances, the officers have a reasonable and objective basis for suspecting that particular person is engaged in criminal activity." United States v. Williams, 962 F.2d 1218, 1223 (6th Cir.), cert. denied, 113 S.Ct. 264 (S.Ct.1992).
 
 
 13
 There is no dispute that Stout became suspicious upon observing an exchange between individuals in an area known for drug trafficking.[2] His suspicion intensified when, pulling into the lot, he saw the individuals outside the car run away.
 
 
 14
 Defendants complain, however, that Stout was not an expert in narcotics detection or investigation. An exchange between "three male blacks and two occupants of [a] vehicle," they contend, is behavior typical of a broad range of innocent conduct such that further investigation was necessarily unreasonable. We disagree.
 
 
 15
 First, we reject, as wholly unsupported, any suggestion that Stout's decision to stop the vehicle was race motivated. Second, the officer's previous experience making drug arrests in the area properly informs our decision. See United States v. Cortez, 449 U.S. 411 (1981) ("the evidence ... must be seen and weighed ... as understood by those versed in the field of law enforcement") (emphasis added). "Expertise" is not dispositive. Finally, reasonable suspicion is based upon the totality of circumstances surrounding the event regardless of whether any individual factor might be insufficient.[3] The circumstances here were such as to justify a Terry stop.
 
 
 16
 C. Detention of the Defendants in the Patrol Car
 
 
 17
 An officer who makes a valid investigatory stop may briefly detain those he suspects of criminal activity to verify or quell that suspicion. United States v. Winfrey, 915 F.2d 212, 216 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 709 (1991). The Constitution permits "detention and investigative methods," id. (citing Sharpe, 470 U.S. at 682), " 'reasonably related in scope to the circumstances which justified the interference in the first place.' " Sharpe, 470 U.S. at 682 (quoting Terry, 392 U.S. at 20). We examine the nature and quality of the detention, in light of "the law enforcement purposes to be served by the stop," id. at 685, to determine if the seizure was "so minimally intrusive as to be justifiable on reasonable suspicion." Id. (citations omitted).
 
 
 18
 No bright line test exists to evaluate whether an investigatory seizure was so invasive as to constitute an arrest requiring probable cause. Id.; United States v. Watson, 423 U.S. 411 (1976) (probable cause necessary for warrantless arrest). Instead, we are guided by "common sense and ordinary human experience." Sharpe, 470 U.S. at 685. Moreover, intrusiveness is not measured in the abstract. Id. at 687. "The question is not simply whether some ... [less intrusive means] was available, but whether the police acted unreasonably in failing to recognize or pursue it." Id.
 
 
 19
 Without question, Stout acted lawfully when he placed the defendants in his patrol car. The officer, already suspecting both defendants of illegal drug activity and having noticed a drive-out tag, began his investigation by asking some simple questions. Hood stated that he did not know whose car he was driving and identified the passenger as Timothy Thomas. Thomas, a few moments later, identified himself as Timothy Brown. At that point, Stout, not unreasonably, also thought the car might be stolen and needed the VIN to confirm or dispel that suspicion.
 
 
 20
 Stout testified that he feared that, if unsecured, the defendants might run away while he checked the VIN. Stout did not raise his voice, handcuff the suspects, or tell them that they were under arrest. He merely placed them in the back of a locked patrol car which does not, per se, require probable cause. United States v. Parr, 843 F.2d 1228, 1230 (9th Cir.1988). The defendants acknowledge the absence of a bright line test, yet they maintain that United States v. Richardson, 949 F.2d 851 (6th Cir.1991); United States v. Thompson, 906 F.2d 1292 (8th Cir.1990); and United States v. Chamberlin, 644 F.2d 1262 (9th Cir.1980); govern the resolution of this issue. The factual scenarios in those cases differ markedly from the situation in the present case, rendering them far from dispositive when considering this appeal.
 
 
 21
 In Richardson, the defendant was detained in a squad car for upwards of fifteen minutes while another suspect was questioned, and this court found that the defendant's detainment in the squad car constituted an arrest. 949 F.2d at 854, 857-58. The court in Thompson found the defendant had been arrested when placed in a squad car because seven squad cars were present at the scene, the investigatory stop lasted for one and one-half hours, and the arresting officer characterized his action as an arrest. 906 F.2d at 1296-97. Finally, in Chamberlin, the court found that the defendant's twenty-minute stay in the back seat of a patrol car, coupled with the fact that the officer on the scene questioned the defendant and observed his demeanor, constituted an arrest. 644 F.2d at 1267. In the present case, Stout did not confine one suspect in the patrol car at length while questioning another, cf. Richardson; did not question or "observe the demeanor" of either suspect while they were in the patrol car, cf. Chamberlin; did not have the support of six other patrol cars, cf. Thompson; and did not allow the investigatory stop to last any longer than necessary to effectuate the purpose of his stop. See Florida v. Royer, 460 U.S. 491, 500 (1983).
 
 
 22
 Although defendants suggest otherwise, their inability to leave at this point did not convert the stop into a de facto arrest. See United States v. Prior, 941 F.2d at 427 (6th Cir.) (reasonable suspicion sufficient to support lone officer holding suspect at gunpoint until other officers' arrival), cert. denied, --- U.S. ----, 112 S.Ct. 613 (1991); Adams v. Williams, 407 U.S. 143, 145 (1972) ("The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow ... a criminal to escape."). We cannot imagine how Stout, alone with the defendants, might have met his obligation to protect the public in a less intrusive manner. Accordingly, we find that this seizure was fully supported by Stout's suspicion of criminal activity.[4]
 
 D. The Pill Bottle and Probable Cause
 
 23
 After looking in the Monte Carlo for its VIN, Stout saw a clear pill bottle containing a white rocky substance which he thought was cocaine. He then seized the bottle and placed the defendants under arrest.
 
 
 24
 Defendants again challenge Stout's expertise in narcotics detection and point to his statement on cross examination that the pill bottle could, in fact, have contained anything. Thus, his observation, they argue, did not constitute probable cause.
 
 As the district court noted:
 
 25
 [P]robable cause is a flexible, common sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.
 
 
 26
 (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (citations omitted)). Viewing the circumstances in their entirety, Stout's initial suspicion that defendants had engaged in a drug transaction rose to the level of probable cause when he saw the bottle and its contents. His seizure of the property and subsequent arrest of the defendants, therefore, was justified. Brown, 460 U.S. at 739 ("if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately"); United States v. Watson, 423 U.S. 411 (1976).
 
 
 27
 E. Search of the Monte Carlo Incident to the Arrest
 
 
 28
 The district court found White's search of the car and Stout's subsequent seizure of the gun permissible under New York v. Belton, 453 U.S. 454 (1981). In Belton, the Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Id. at 460 (footnotes omitted). Defendants argue that because they were not arrested while still in the Monte Carlo, the police had no authority to search under Belton.
 
 
 29
 Long before Belton, it was established that a warrantless search incident to a lawful arrest is limited to that area " 'within the immediate control of the arrestee.' " Id. at 460 (citing Chimel v. California, 395 U.S. 752 (1969)). This exception to the warrant requirement was "based on the need to disarm and to discover [destructible] evidence." Belton, 453 U.S. at 461 (citation omitted). Accordingly, areas within an arrestee's control included those "area[s] into which an arrestee might reach in order to grab a weapon or evidentiary ite[m]." Id. at 460 (citation omitted). The Court bemoaned the absence of a "workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its recent occupant," id., and the attendant costs to law enforcement. Balancing automobile occupants' limited expectation of privacy in a vehicle's interior, which is further diminished upon the occupants' custodial arrest, against the practical necessities of law enforcement, the Belton court fashioned what it hoped would be a workable rule.
 
 
 30
 We made clear in United States v. White, 871 F.2d 41 (6th Cir.1989), that the "Belton rule applies even when the arrestee is out of reach of the car and its contents." Id. at 44. Defendants acknowledge "that, in this Circuit, our consistent reading of Belton has been that, once a police officer has effected a valid arrest, that officer can search the area that is or was within the arrestee's control." Id. (emphasis in original). They cite White and United States v. Hatfield, 815 F.2d 1068 (6th Cir.1987), however, for their supposition that a Belton search is permissible only if the arrest takes place while the suspect is in the vehicle. Moreover, if not so limited, they contend, under Belton, the search is too removed from its underlying justification--the need to protect arresting officers and preserve evidence. Defendants misread these decisions.
 
 
 31
 In both White and Hatfield, as in this case, the suspects were ordered outside their vehicles immediately prior to arrest. White, 871 F.2d at 42; Hatfield, 815 F.2d at 1070-71. Moreover, as we noted in White, "in Belton itself, the defendants had been asked to get out of their car, arrested, 'patted down,' and 'split ... up into four separate areas of the Thruway,' " White, 871 F.2d at 44 (quoting Belton, 453 U.S. at 456), prior to the search. Nothing in these decisions implies that the arrest must occur before the suspects exit the vehicle. To the limited extent that the "incident to the arrest" exception has strayed from some of its earlier moorings, it was the Belton Court, in responding to the need for a workable rule, that set it free.
 
 
 32
 If we uphold the district court's ruling, defendants argue, our decision "would authorize an arrest of a suspect at his place of employment and a contemporaneous search of the suspect's automobile in a parking garage which he had entered earlier in the day." We do not suggest that Belton is without limits. We merely reject the limit that defendants suggest.
 
 
 33
 Since defendants' Fourth Amendment rights were not violated, the evidence need not be suppressed.
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 Finding that no Fourth Amendment violation had occurred, the district court declined to address Thomas's standing
 
 
 [2]
 Stout had previously been a patrol officer in the neighborhood, thus he was well acquainted with the area
 
 
 [3]
 We need not reach whether Stout's observation of the exchange alone would support a Terry stop
 
 
 [4]
 Finding that the investigatory detention was so minimally intrusive as to be supported by reasonable suspicion, we make no intimation regarding whether there was also, at this point, probable cause. Cf. United States v. Anderson, 923 F.2d 450, 456-57 (6th Cir.) (probable cause found where defendants raced away from house in area recently plagued by burglaries, were unable to give officers plausible explanations of their behavior, lacked identification, and license plate in rear windshield prevented easy identification), cert. denied, --- U.S. ----, 111 S.Ct. 1633 (1991)