# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs January 18, 2001

## STATE OF TENNESSEE v. TIMOTHY L. ROBERTSON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-B-1027     J. Randall Wyatt, Jr., Judge**

———

**No. M2000-01235-CCA-R3-CD - Filed December 7, 2001**

———

The defendant, Timothy L. Robertson, was indicted on two counts of unlawful possession of a controlled substance with intent to sell; one count of felony possession of a weapon; and one count of driving on a revoked or suspended license. Following the trial court's denial of his motion to suppress, he pled guilty to one count of possession of more than .5 grams of cocaine with the intent to resell, a Class B felony, and one count of felony possession of a weapon, a Class E felony. In accordance with the terms of his plea bargain agreement, the remaining counts of the indictment were dismissed. Pursuant to Rule 37(b)(2)(1) of the Tennessee Rules of Criminal Procedure, the defendant reserved the right to appeal as a dispositive question of law the issue of whether his custodial arrest and the subsequent search of his vehicle violated the Fourth Amendment of the United States Constitution, Article I, Section 7 of the Tennessee Constitution, and Tennessee Code Annotated Section 40-7-118(b)(1)(c). We conclude that the officers were required to make a custodial arrest of the defendant to prevent his continued violation of the driver's license law, and that the subsequent search of his vehicle was valid as incident to that arrest. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Nicholas D. Hare, Nashville, Tennessee, for the appellant, Timothy L. Robertson.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Erik R. Herbert, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual Background

At about 5:00 p.m. on October 16, 1998, Metropolitan Nashville Police Officer David Goodwin stopped the defendant for running a stop sign at Rockwood Drive and Rockwood Place in Nashville. Officer John Vincent, driving in a separate patrol car, arrived on the scene in time to see the defendant get out of his car and walk to the rear of his vehicle. The defendant had no identification but provided the officers his name, date of birth, and social security number. By running his name and date of birth through dispatch, Officer Vincent learned that the defendant's driver's license had been revoked. The officers then placed him under custodial arrest for driving on a revoked license, handcuffed him and put him in the rear of a patrol car. Upon opening the driver's door of the defendant's car, Officer Vincent discovered a loaded clip of nine-millimeter ammunition between the driver's seat and the door jam. The officers' continued search uncovered, among other items: a nine-millimeter handgun and approximately ten grams of crack cocaine underneath the driver's seat; eleven pills of Alprazolam, a Schedule IV controlled substance, in the console; and the butt of a marijuana cigarette in the ashtray. The officers also found $2162 in cash in the defendant's right front pocket.

The defendant filed a motion to suppress all evidence resulting from the stop. At the February 1, 2000, suppression hearing, Officer Vincent testified that the defendant's girlfriend pulled up in her car as he was beginning his search of the defendant's vehicle, at about the time that he opened the driver's door to the defendant's car. He said that they were following standard procedure of inventorying the vehicle prior to towing, and that they did not turn the vehicle over to the girlfriend because she was in a separate car and had small children with her. Officer Vincent explained that they placed the defendant under custodial arrest because he had no valid identification, and his license came back as revoked. He said that it was departmental policy to place anyone under custodial arrest whose license comes back as revoked or suspended, and who cannot produce a proper state identification. Officer Goodwin testified that the defendant was placed under custodial arrest when they learned that he did not have a driver's license. He said that the defendant's girlfriend arrived at the scene at "about the time he was placed in custody." The defendant's girlfriend, Latika Morton, testified that she arrived at the scene before the defendant was handcuffed while the police were still questioning him about his identification.

At the conclusion of the hearing, the trial court denied the defendant's motion to suppress. The court found that the officers appropriately placed the defendant under custodial arrest based on the fact that he was driving on a revoked license and was unable to produce valid identification, and that their search of the passenger compartment of his vehicle was permissible as incident to the valid arrest and as part of an inventory search prior to towing.

On February 23, 2000, the defendant filed a motion to reconsider the trial court's decision, citing State v. Walker, 12 S.W.3d 460 (Tenn. 2000), to argue that the officers had no objectively reasonable basis to doubt his identification information and, thus, no lawful grounds to place him

under custodial arrest for the misdemeanor offense of driving on a revoked license. On March 23, 2000, the trial court entered a written order denying the defendant's motion. The court first distinguished Walker from the instant case by noting that the identification information provided by Walker, unlike that provided by the defendant in the case at bar, came back as belonging to a valid driver's license. The court then found that the defendant was lawfully placed under custodial arrest based on the subsection of the cite and release statute providing for custodial arrest for a misdemeanor offense when "[t]here is a reasonable likelihood that the offense would continue or resume," Tenn. Code Ann. § 40-7-118(c)(2)(1997), and that the subsequent search of the vehicle was permissible as incident to the custodial arrest, and as a valid inventory search in preparation for the vehicle to be towed. The court also found that the officers' discovery of the ammunition clip created probable cause to justify a further search of the vehicle.

The defendant subsequently pled guilty to the possession of more than .5 grams of cocaine with the intent to resell and felony possession of a weapon. With the permission of the trial court and the State, he reserved the following question of law, which he states as follows: "Whether the custodial arrest of the defendant and subsequent search of the vehicle he was driving conformed with the Fourth Amendment of the United States Constitution, Article I, Section 7 of the Tennessee Constitution, and Tenn. Code Ann. § 40-7-118(b)(1)(c)."

## Standard of Review

We review the trial court's denial of the defendant's motion to suppress under the following well-established standard of review:

> The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The trial court's application of law to the facts, however, is a question of law, which is reviewed *de novo*. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

## Suppression

On appeal to this court, the defendant cites Walker and Tennessee Code Annotated Section 40-7-118(b)(1) and (c)(3) to argue that the officers could not lawfully place him under custodial arrest based solely on the fact that he was unable to produce photographic identification, and that their subsequent search of his car therefore violated the protections against unreasonable search and seizure afforded by the United States and Tennessee Constitutions. He also argues that there is no

merit to the State's contention that a custodial arrest was necessary to prevent a continuation of the offense, because his girlfriend could have driven him from the scene in her car. The State argues that the cite and release statute provided the officers with discretion to place the defendant under custodial arrest for driving on a revoked license, and that the officers took him into custody not because of his failure to produce picture identification, but because of the likelihood that the offense would continue. The State therefore contends that the trial court properly denied the motion to suppress because the search of the passenger compartment of the defendant's vehicle was conducted incident to a valid arrest. We agree with the State.

Tennessee Code Annotated Section 40-7-118, the "cite and release" statute, provides that in the case of most misdemeanors, an officer must issue a citation instead of effectuating a custodial arrest. See Tenn. Code Ann. § 40-7-118(b)(1) (1997). However, for some misdemeanors, including driving on a revoked or suspended license, an officer has the discretion to either issue a citation or place the individual who committed the offense under custodial arrest. See id. at (b)(3)(C); see also State v. John Earl Thompson, No. 01C01-9308-CC-00259, 1994 WL 179778, at *2 (Tenn. Crim. App. at Nashville, May 12, 1994) ("Citations are discretionary with the officer for persons arrested for . . . revoked or suspended driver's license infractions[.]"). Moreover, the statute provides that if one of eight conditions exists, "no citation shall be issued." Tenn. Code Ann. § 40-7-118(c)(1)-(8). The conditions for which an officer must place an individual under custodial arrest include when "[t]here is a reasonable likelihood that the offense would continue or resume," id. at (c)(2), and when "[t]he person arrested cannot or will not offer satisfactory evidence of identification[.]" Id. at (c)(3).

The defendant relies on Walker as support for his argument that the officers should not have placed him under custodial arrest. We agree with the State and the trial court that Walker is readily distinguishable from the case at bar. The sole issue in Walker was what constitutes "satisfactory evidence of identification" for the purposes of subsection (c)(3) of Tennessee Code Annotated Section 40-7-118. In that case, a police officer approached a defendant whose car radio was playing at an excessive volume, informed him that he would be issued a citation for violating the city's noise ordinance, and asked to see his driver's license and vehicle registration. Walker, 12 S.W.3d at 462-63. The defendant, who had left his driver's license at his mother's house, provided the officer with his name, date of birth, and driver's license number, all of which were verified by the officer's dispatcher as belonging to a valid license. Id. at 463. Nonetheless, the officer decided to take the defendant into physical custody because he did not have his driver's license or other identification with him. When the officer searched the defendant incident to that arrest, he found marijuana and a substance containing cocaine. Id. Adopting an "objectively reasonable" test for what constitutes satisfactory evidence of identification, our supreme court held that an officer must have a "'specific articulable reason to doubt that the cited person has accurately identified himself [or herself] before taking him [or her] into custody.'" Id. at 465 (quoting People v. Monroe, 12 Cal. App. 4th 1174, 16 Cal. Rptr. 2d 267, 286 (1993) (Smith, J., dissenting)). Because the State failed to show an objective reason for the officer to doubt the reliability of the identification information provided by the defendant, the court concluded that the custodial arrest was unlawful, and that the evidence seized as a result of that arrest should have been suppressed. Id. at 468.

The evidence here, by contrast, reveals that the defendant was placed under custodial arrest not because the officers doubted his identification information, but because the information he provided revealed that he was driving on a revoked license, and there was a reasonable likelihood that the offense would continue. In such a situation, custodial arrest is not merely within the officer's discretion, but is required under subsection (c)(2) of Tennessee Code Annotated Section 40-7-118. See Tenn. Code Ann. § 40-7-118(c)(2). As support for his claim that he was placed under custodial arrest because of his failure to provide photographic identification, the defendant cites a portion of Officer Vincent's testimony in which he stated that the officers arrested the defendant because "[t]here was no way to verify his information without a picture I.D. He had no kind of picture I.D." Elsewhere in his testimony, however, Officer Vincent indicated that it was the combination of the defendant's revoked driver's license status and lack of photographic identification that caused the officers to place him under custodial arrest. Furthermore, Officer Vincent's subjective belief about the reason for the custodial arrest is not controlling. See State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997) (citing Whren v. United States, 517 U.S. 806, 812, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996)). Officer Goodwin testified at the suppression hearing that he did *not* place the defendant under custodial arrest when he first learned that he had no photographic identification. Instead, he asked the defendant to step away from the back of his vehicle while Officer Vincent ran the information the defendant provided through dispatch. Only after they learned that the status of the defendant's license was revoked was he placed in custody.

The defendant argues that there was no reasonable likelihood that he would have continued to drive on a revoked license because his girlfriend was present at the time of his arrest, and could have driven him from the scene in her automobile. Based on the trial court's language that "[a]t some point during the stop, Ms. Latika Morton . . . arrived on the scene," the defendant asserts that the court "thus did not find that [he] was in custody" when his girlfriend arrived at the scene, and argues that there was therefore no basis for the officers to take him into custodial arrest in order to prevent a continued offense.

We disagree. The trial court's statement that Morton arrived "[a]t some point during the stop" does not, as the defendant implies, equate to a finding that he was *not* in custody when she arrived at the scene. Although Morton testified that she arrived before the defendant was arrested, both officers' testimonies indicated that she appeared either simultaneously with the custodial arrest, or *after* the defendant had already been placed in handcuffs and inside the patrol car. Officer Vincent testified that Morton arrived as he was beginning his search of the defendant's car, and Officer Goodwin said that she arrived "at about the time" that the defendant was placed in custody. Officer Vincent further testified that Morton did not at first identify herself as the defendant's girlfriend. Particularly noteworthy is the fact that she was driving a separate car. Thus, even had she arrived before the defendant was placed under custodial arrest, the officers would have been justified in concluding that there was a reasonable likelihood that the defendant would continue driving his own car if they merely issued him a citation. Under these circumstances, the officers were authorized to place the defendant under custodial arrest to prevent a continuation of the offense. See State v. Jeffrey L. Hammons, No. M1999-00756-CCA-R3-CD, 2000 WL 924633 (Tenn. Crim. App. at Nashville, June 30, 2000) (concluding that officer was authorized to place defendant whose license

-5-

was revoked under custodial arrest to prevent further violation), perm. to appeal denied (Tenn. Feb. 20, 2001); State v. Juan E. McAdams, No. 01C01-9704-CR-00140, 1998 WL 305500, at *2 (Tenn. Crim. App. at Nashville, June 11, 1998), perm. to appeal denied (Tenn. Mar. 1, 1999) (concluding that custodial arrest is "appropriate" when officer discovers defendant is driving on a revoked license in order to prevent continuation of the offense).

Having placed the defendant under custodial arrest, the officers were then authorized to make a contemporaneous search of the passenger compartment of his vehicle incident to that arrest. See New York v. Belton, 453 U.S. 454, 460, 101 S. Ct. 2860, 2864, 69 L. Ed. 2d 768 (1981); State v. Watkins, 827 S.W.2d 293, 295-96 (Tenn. 1992). The fact that the defendant was handcuffed and seated in the rear of the patrol car at the time does not destroy the contemporaneous nature of the search. United States v. White, 871 F.2d 41, 44 (6th Cir. 1989); Watkins, 827 S.W.2d at 296. We therefore conclude that the evidence in this case was properly admissible as the result of a search conducted incident to a valid custodial arrest. Because the evidence was discovered within the passenger compartment, we need not determine whether, under the circumstances of this case, the officers were authorized to conduct an inventory search of the vehicle.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE