*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0003p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JAMES HERNDON,

*Defendant-Appellant.*

No. 04-5352

>

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 03-20207—Bernice B. Donald, District Judge.

Argued: December 3, 2004

Decided and Filed: January 5, 2005

Before: GILMAN and SUTTON, Circuit Judges; McKEAGUE, District Judge.[*]

---

## COUNSEL

**ARGUED:** Needum L. Germany, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Lorraine Craig, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Needum L. Germany, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Lorraine Craig, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

---

## OPINION

---

RONALD LEE GILMAN, Circuit Judge. James Herndon pled guilty to illegally possessing a firearm, which the police found pursuant to a warrantless search of his truck following Herndon's arrest. In this direct appeal, Herndon alleges that the district court erred in denying his motion to suppress the evidence. He properly reserved the right to appeal this adverse evidentiary ruling. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

---

[*] The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

1

# I.  BACKGROUND

## A.  Factual background

Ronald Weedle, a Memphis police officer, testified that he and his partner, Jimmy Gaylor, saw Herndon driving a truck into a carwash lot in November of 2002.  The sticker on the license plate, showing an expiration date in 2003, was falling off, so they decided to check the tag number using a computer in the police car.  While waiting for the results, they followed Herndon into the carwash lot.  The results soon came back, informing the officers that the truck's tag had expired in 2001.

This caused Weedle and Gaylor to approach Herndon, who was standing only five feet away from the open driver's side door of the truck, and ask for his driver's license.  Herndon responded that he had no driver's license.  The police officers then asked for his name, birth date, and Social Security number.  He gave a false name and a false birth date.  When they found out that the name was not on file, they asked Herndon again, and he gave them his real name and a different birth date.  At this point they frisked him and found his wallet, which contained the correct identifying information.  They then checked the information and learned not only that Herndon's license was revoked, but also that he had multiple outstanding warrants for his arrest.  This caused the officers to take Herndon into custody.

Before transporting Herndon to the police station, the police searched the truck.  During the search, Gaylor noticed "a bulge in the fold of the rear seat" and found a loaded .380 caliber handgun.  He also found a leather pouch next to the handgun that contained 182 pills for which Herndon had no prescription.

Herndon's girlfriend later arrived on the scene, but she was not permitted to drive the truck away.  According to Weedle, the internal police divisions in charge of narcotics and traffic offenses both had the option under police department policy to have the vehicle towed.

## B.  Procedural background

Herndon moved to suppress both the evidence taken from the truck and the statements he made after being arrested but before being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).  Comparing Weedle's testimony to differing testimony offered by Herndon and an additional witness for the defense, the district court found Weedle's testimony more credible.  It held that "[o]nce [Herndon] was under arrest, [the police] had the legal authority to conduct an inventory search."  The district court therefore denied the motion to suppress with respect to the evidence obtained from the truck, but granted the motion with respect to the statements that Herndon had made after his arrest.

Herndon pled guilty to one count of possessing a firearm after having been convicted of a crime punishable by a term of imprisonment exceeding one year.  He was sentenced to 94 months in prison and two years of supervised release.  As part of his plea bargain, Herndon reserved "the right to have an appellate court review the adverse determination of [his] motion to suppress."  This timely appeal followed.

# II.  ANALYSIS

## A.  Standard of review

Factual findings supporting a district court's ruling on a motion to suppress are upheld unless clearly erroneous, but "[t]he court's final determination as to the reasonableness of the search is a question of law reviewed de novo."  *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir. 2003) (upholding the district court's denial of a motion to suppress evidence that was found during a customs inspection).  Where the district court has denied the motion to suppress, "the appellate court must consider the evidence in the light most favorable to the government."  *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc) (upholding the district court's denial of a motion to suppress evidence that was found during a search of the defendant's vehicle).

**B.        The constitutionality of searching Herndon's truck**

   *1.        Search incident to arrest*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Searches of vehicles "must meet the test of reasonableness under the Fourth Amendment before evidence obtained as a result of such searches is admissible." *Preston v. United States*, 376 U.S. 364, 366 (1964).

Unlike searches of a suspect's home, which require a warrant unless they fall within one of several well-defined exceptions, *see Coolidge v. New Hampshire*, 403 U.S. 443, 474 (1971), searches of a suspect's vehicle without a warrant have been found reasonable in many circumstances. In particular, the police can search the vehicle occupied by a person being lawfully arrested without first obtaining a search warrant. *See New York v. Belton*, 453 U.S. 454, 460 (1981) (holding that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile"); *Chimel v. California*, 395 U.S. 752, 763 (1969) (noting that "it is entirely reasonable for the arresting officer to search . . . the area into which an arrestee might reach in order to grab a weapon or evidentiary items"); *Preston*, 376 U.S. at 367 (holding, in the context of the search of a suspect's car, that the police can search "things under the accused's immediate control, and . . . the place where he is arrested") (citations omitted).

Herndon correctly notes in his brief that *Belton* did not settle the question of whether a vehicle can be searched incident to an arrest if the suspect is no longer occupying the vehicle at the time that the police initiate contact. This circuit's cases have also left some doubt about this point. *Compare United States v. Strahan*, 984 F.2d 155, 159 (6th Cir. 1993) (holding that *Belton* was inapplicable to the search of an automobile when the occupant "was approximately thirty feet from his vehicle when arrested"), *with United States v. White*, 871 F.2d 41, 44 (6th Cir. 1989) (upholding the constitutionality of the search of an arrestee's vehicle where the arrestee was in the vehicle when the police initiated contact, but was out of the vehicle at the time of his arrest).

Recently, however, the Supreme Court has clarified the scope of *Belton*. In *Thornton v. United States*, __ U.S. __, 124 S. Ct. 2127 (2004), the Court held that "*Belton* governs even when an officer does not make contact until the person arrested has left the vehicle." *Id*. at 2129. "So long as an arrestee is the sort of 'recent occupant' of a vehicle such as petitioner was here, officers may search that vehicle pursuant to the arrest." *Id*. at 2132. The circumstances giving rise to the search in *Thornton* were nearly identical to those in the present case, and they leave little doubt that Herndon is the same "sort of recent occupant" as was Thornton:

> After petitioner passed him, [Officer] Nichols ran a check on petitioner's license tags, which revealed that the tags had been issued to a 1982 Chevy two-door and not to a Lincoln Town Car, the model of car petitioner was driving. Before Nichols had an opportunity to pull him over, petitioner drove into a parking lot, parked, and got out of the vehicle. Nichols saw petitioner leave his vehicle as he pulled in behind him. He parked the patrol car, accosted petitioner, and asked him for his driver's license. He also told him that his license tags did not match the vehicle that he was driving.
>
> Petitioner appeared nervous. . . . Nichols asked petitioner if he had any narcotics or weapons on him or in his vehicle. Petitioner said no. Nichols then asked petitioner if he could pat him down, to which petitioner agreed. . . . [After the petitioner revealed that he was carrying narcotics,] Nichols handcuffed petitioner, informed him that he was under arrest, and placed him in the back seat of the patrol car. He then searched petitioner's vehicle and found a . . . handgun under the driver's seat.

*Id*. at 2129.

Indeed, the "concerns regarding officer safety and the destruction of evidence" cited by the *Thornton* court, *id.* at 2131, apply with at least equal force here because, when the police approached Herndon, the door of his truck was still open and he was standing only a few feet away. The search of Herndon's truck thus falls squarely within the range of searches deemed permissible by the Supreme Court in *Belton* and *Thornton*.

### 2.      *Inventory search*

Both parties have argued at length about whether the search of Herndon's truck was a valid inventory search. *See United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998) (noting that officers can conduct inventory searches of vehicles lawfully taken into custody, and citing *Colorado v. Bertine*, 479 U.S. 367, 372 (1987), for the proposition that these searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen or vandalized property, and to guard the police from danger"). Because the search yielding the gun was valid as a search incident to Herndon's arrest, however, we have no need to address the inventory-search issue. *See United States v. Patterson*, 993 F.2d 121 (6th Cir. 1993) (declining to determine whether the search of a motor vehicle was valid as an inventory search on the ground that the search was valid as a search incident to arrest).

## C.      Sentencing issues

We also note that Herndon submitted a supplemental brief during the week of oral argument, asserting that the sentence imposed by the district court under the Sentencing Guidelines is unconstitutional under *Blakely v. Washington* ___ U.S. ___, 124 S. Ct. 2531 (2004). The brief acknowledges that this court held in *United States v. Koch*, 383 F.3d 436 (6th Cir. 2004) (en banc), that *Blakely* does not invalidate the Sentencing Guidelines, but explains that Herndon "wishes to preserve the record" with respect to his *Blakely* claims. Because *Koch* compels us to reject Herndon's *Blakely* claim, we have no need to further discuss this issue or to consider whether Herndon has properly preserved the argument.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.