NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0432n.06
Filed: May 23, 2005

No. 04-5192

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| EMMANUEL B. CHENAULT, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellant. | ) | |

**BEFORE:    NELSON and BATCHELDER, Circuit Judges; COLLIER, District Judge.***

**CURTIS L. COLLIER, District Judge.**  Defendant-Appellant Emmanuel B. Chenault

("Chenault") appeals the district court's denial of his motion to suppress a firearm and narcotics

found on his person pursuant to a warrantless search.  Because we conclude the district court did

not err, we **AFFIRM** the district court's denial of Chenault's motion to suppress.

### I.  FACTS AND PROCEDURAL BACKGROUND

On June 7, 2003, the Lexington, Kentucky Police Department received a call reporting a

robbery at the Sportsman Liquor Store.  The caller gave a name but no confirming information,

and indicated a two-toned black and silver or blue and silver sports utility vehicle ("SUV")

containing three black males was involved in the robbery.  A police dispatcher advised Officer

---

*The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

Robert Terry, who was on patrol in the area in a marked police cruiser, the suspects had pulled into the combination McDonald's restaurant and British Petroleum ("BP") gas station parking lot nearby. The dispatcher simultaneously dispatched officers to the Sportsman Liquor Store to investigate the robbery.

Officer Terry pulled into the McDonald's/BP parking lot and saw an SUV matching the description given by the caller in the parking lot. Officer Terry parked approximately 40 feet behind the SUV and observed it for a short time without turning on his siren or lights. Officer Terry testified the parking lot was "very well lit." He saw a black male (who he later learned was Norman Haddix, Chenault's codefendant) get out of the back passenger side door of the SUV, reach in his waistband while looking back at Officer Terry, and walk away from Officer Terry's car, towards the front of the SUV.

Officer Terry, believing the suspects in the vehicle to be armed from the recent armed robbery he believed they had committed, thought Haddix was reaching for a weapon, so Officer Terry exited his police cruiser and ordered Haddix to put his hands up. Haddix refused and walked around the SUV back towards the passenger side.

At this same time, without either Officer Terry or Haddix seeing him, Sergeant Robert Cottone, who also had been on patrol in the area, responded to the same dispatcher's call and pulled into the parking lot. The front parking lot was full, so Cottone parked in the back and came around the side of the building towards the front of the parked SUV. After hearing Officer Terry repeatedly ask Haddix to put his hands up with no compliance by Haddix, Cottone then saw Haddix reach down towards his right leg. Cottone saw Haddix retrieve a bag of a white substance from his sock and throw it on the ground not far away from where he was standing.

-2-

Presuming that bag contained cocaine, Cottone ran to Haddix, restrained him, and put him under arrest for possession of cocaine. Cottone retrieved the bag which did in fact contain crack cocaine.

Officer Terry heard Cottone arrest Haddix and tell him he was under arrest for possession of crack cocaine. Officer Terry then proceeded to ask Chenault (who was in the driver's seat of the SUV) and the other passenger to exit the SUV so he could search it. Officer Terry patted Chenault down for weapons and felt a .38 caliber snub nose revolver in the waistband of his pants. Terry then arrested Chenault for possession of a concealed weapon. Officer Terry also found $880, approximately 13.3 grams of crack cocaine, and 13 Xanax pills on Chenault's person. The third passenger in the vehicle was not arrested.

After Haddix and Chenault had been placed under arrest, the policemen learned the Sportsman liquor store had not, in fact, been robbed.

Chenault was charged with possession of drugs with intent to distribute and possession of a firearm during and in relation to drug trafficking. Chenault filed a motion to suppress the evidence seized from him, which the district court denied after a hearing. The district court found the search of Chenault's person was reasonable and based on probable cause because (a) the police had the right to search the vehicle for evidence of a crime since Haddix exited it with narcotics on his person, and (b) because Chenault was an occupant of that vehicle, the police had the right to search him, based on *New York v. Belton,* 453 U.S. 454, 460, 101 S. Ct. 2860, 2864, 69 L. Ed. 2d 768, 775 (1981).

Chenault subsequently entered a conditional guilty plea to possession with intent to distribute five grams or more of cocaine base and possession of a firearm during and in relation

to drug trafficking, reserving the right to appeal the district court's order denying his motion to suppress. The district court sentenced Chenault to 120 months imprisonment. Chenault now appeals the denial of his motion to suppress the evidence seized from him on June 7, 2003.

## II. STANDARD OF REVIEW

We review the district court's factual findings regarding a motion to suppress for clear error, but the district court's conclusions of law, including the reasonableness of the search, are reviewed *de novo*. *United States v. Herndon*, 393 F.3d 665, 667 (6th Cir. 2005). When the district court denies a motion to suppress, the court of appeals reviews all evidence in the light most favorable to the Government. *Id.*

## III. ANALYSIS

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . and no Warrants shall issue, but upon probable cause . . . " U.S. CONST. amend. IV. During a lawful arrest, however, a police officer may conduct a contemporaneous search without a warrant. *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). This search is limited to the person arrested and the area within his immediate control, and the purpose is to remove weapons the arrestee might use to resist arrest or effect an escape, and prevent the concealment or destruction of evidence. *Id.* When a lawful arrest of the occupant of an automobile has occurred, this search may extend to the passenger compartment of that automobile. *Belton*, 453 U.S. at 460, 101 S. Ct. at 2864. The rationales underlying this limited search incident to arrest exception, officer safety and preservation of evidence, justify the infringement of any privacy interest the arrestee may have had in the contents of the automobile. *Id.,* 453 U.S. at 461.

-4-

The district court based its decision to deny Chenault's motion to suppress the gun and narcotics primarily on *Belton*. The facts of this case differ in one significant respect from *Belton*, which involved the reasonableness of searches of the passenger compartment of a vehicle after the arrest of an occupant; here, the Court is faced with the reasonableness of the removal and search of the driver of a vehicle after the arrest of another passenger of that vehicle. *See id.* The proper analytical framework for the reasonableness of this search is that laid out by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

In *Terry*, the Supreme Court held where a police officer reasonably concludes "criminal activity may be afoot" and suspects may be armed and dangerous, the officer ". . . is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." 392 U.S. at 30, 88 S. Ct. at 1884-85. The standard for a warrantless "stop and frisk" search under *Terry* is whether the officer could "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.*, 392 U.S. at 21-22, 88 S. Ct. at 1880. The Supreme Court has further outlined the requirements for a stop and frisk, in *United States v. Cortez*:

> An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. . . the totality of the circumstances– the whole picture– must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.

449 U.S. 411, 417-418, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621 (1981) (internal citations omitted).

The totality of specific and articulable facts to which Officer Terry could point in this case made this search entirely reasonable, thus the district court did not err in so holding.

Officer Terry responded to a dispatch call to investigate suspects involved a reported robbery, which he presumed to be an armed robbery, and came upon a vehicle matching the description of the vehicle involved in the reported robbery. Officer Terry then saw a passenger of that vehicle, Haddix, exit the vehicle, reach for his waistband, and refuse to put his hands up when Officer Terry requested him to do so. Finally, Officer Terry heard Cottone place Haddix under arrest for possession of crack cocaine.

Officer Terry had a "particularized and objective basis" to believe criminal activity involving narcotics had taken place inside the vehicle Chenault was driving after he heard Cottone arrest Haddix for possession of crack cocaine. *See Cortez*, 449 U.S. at 417-418, 101 S. Ct. at 695. The Supreme Court has approved the inference by a police officer that a passenger in a vehicle "will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or evidence of their wrongdoing." *Maryland v. Pringle*, 540 U.S. 366, 373, 124 S. Ct. 795, 801, 157 L. Ed. 2d 769 (2003); *see also Wyoming v. Houghton*, 526 U.S. 295, 304-05, 119 S. Ct. 1297,143 L. Ed. 2d 408 (1999). Haddix and Chenault were in the same vehicle before Haddix exited and discarded narcotics from his person, narcotics that necessarily must have been in the vehicle with Chenault. Officer Terry's inference of a common enterprise of criminal narcotics activity between Haddix and Chenault certainly provides "particularized" suspicion of criminal activity as to Chenault, justifying a limited search of his person for Officer Terry's safety. *Cortez*, 449 U.S. at 417-418, 101 S. Ct. at 695.

The Court would note it considered but is not convinced by Chenault's argument the police had no reasonable suspicion individualized to him because he was doing nothing suspicious in the vehicle at the time Haddix exited it. *See Chandler v. Miller,* 520 U.S. 305, 313,

117 S. Ct. 1295, 1301, 137 L. Ed. 2d 513 (1997) ("To be reasonable under the Fourth Amendment, a search ordinarily must be based on individualized suspicion of wrongdoing"). Even assuming Chenault's *actions* inside the vehicle were not suspicious, it is incontrovertible Chenault was driving a car in which narcotics had been present, and that Officer Terry knew this fact before he removed Chenault from the car and searched him. Officer Terry had reasonable suspicion Chenault was involved in criminal activity that justified the search of his person regardless of Chenault's actions, suspicious or not. Chenault's arguments about the unreliability of the anonymous and ultimately false tip about the liquor store robbery, based on *Florida v. J.L.*, 529 U.S. 266, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (1990), also are unavailing here since the officers saw actual criminal activity take place before Chenault was searched, and did not solely base the search of his person on the anonymous tip.

Because Officer Terry had good reasons to believe Chenault was involved in criminal activity inside the vehicle with Haddix, whom he knew was involved in criminal narcotics activity, Officer Terry's warrantless stop and frisk search of Chenault did not violate the Fourth Amendment, and the district court properly denied Chenault's motion to suppress the evidence found in that search.

## IV. CONCLUSION

For the reasons set forth above, the Court **AFFIRMS** the District Court's denial of Chenault's motion to suppress.